# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IRIS JEANNETTE RODRIGUEZ TORRES, | : | CASE NO. 3:12-cv-00998-CCC-GBC |
| | : | |
| Plaintiff, | : | (JUDGE CONNER) |
| | : | |
| v. | : | (MAGISTRATE JUDGE COHN) |
| | : | |
| CAROLYN W. COLVIN, | : | REPORT AND RECOMMENDATION TO |
| ACTING COMMISSIONER OF | : | DENY PLAINTIFF'S APPEAL |
| SOCIAL SECURITY, | : | |
| | : | Docs. 7,8,9,10 |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

### I. Procedural History

On March 11, 2009, Iris Jeannette Rodriguez Torres ("Plaintiff") protectively filed a Title XVI application for Supplemental Security Income ("SSI"), alleging disability since March 11, 2009. (Tr. 20, 197).

This application was denied, and on August 6, 2010, a hearing was held before an Administrative Law Judge ("ALJ"), where Plaintiff was represented by counsel. (Tr. 20). Plaintiff

and a vocational expert testified. On November 12, 2010, the ALJ issued a decision finding that Plaintiff was not entitled to SSI because Plaintiff could perform unskilled, sedentary work that was available in significant numbers (Tr. 20-30). (Tr. 19-21). On March 23, 2012, the Appeals Council denied Plaintiff's request for review, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-3).

On May 29, 2012, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 1383(c)(3), to appeal the decision of the Commissioner of the Social Security Administration denying social security benefits. Doc. 1.

On September 13, 2012, Commissioner filed an answer and administrative transcript of proceedings. Docs. 6,7. In October and November 2012, the parties filed briefs in support. Docs. 8,9,10. On May 2, 2014, the Court referred this case to the undersigned Magistrate Judge. On May 27, 2014, Plaintiff notified the Court that the matter is ready for review. Doc. 12.

## II.      Standard of Review

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 564 (1988); Hartranft v. Apfel, 181 F.3d 358, 360. (3d Cir. 1999); Johnson, 529 F.3d at 200.

This is a deferential standard of review. See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence is satisfied without a large quantity of evidence; it requires only "more than a mere scintilla" of evidence. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). It may be

less than a preponderance. <u>Jones</u>, 364 F.3d at 503. Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190 (3d Cir. 1986).

To receive disability or supplemental security benefits, Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A).

Moreover, the Act requires further that a claimant for disability benefits must show that he has a physical or mental impairment of such a severity that: "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

### III. Relevant Facts in the Record

### A. Background

Plaintiff was born on July 13, 1975 and was 35 years old when the ALJ issued the decision. (Tr. 14, 197). She completed 12th grade in Puerto Rico. (Tr. 41). She worked as a packer / scanner in a warehouse and at a McDonald's in Puerto Rico. (Tr. 302).

Plaintiff alleged that the conditions that limited her ability to work were her migraines,

herniated discs, depression, anxiety, asthma, stomach hernia, and hiatal hernia. She stated that became unable to work because of these condition on March 11, 2009 (Tr. 242).

Plaintiff previously claimed that she could not work because she was disabled. When the agency denied her benefits in 2006, Plaintiff returned to work. Plaintiff stopped working again in 2008 because she allegedly got dizzy and fell while packaging bottles at her job. She now alleges she is disabled and has been since March 11, 2009, due to back pain and depression.

Plaintiff's request for review challenges only the ALJ's findings with respect to her alleged back pain and mental impairments (Pl.'s Br. at 6-10). The statement of facts focuses on the disputed impairments only.

### B. Relevant Medical Records

### 1. Plaintiff's Allegations of Back Pain

On January 16, 2008, Plaintiff went to the hospital because of wheezing. The medical provider conducted a full physical examination, which revealed that the sensation in Plaintiff's extremities were intact, the deep tendon reflexes were symmetric, and Plaintiff had free range of motion of all of her joints without pain or crepitation. She had no muscle tenderness, no loss of muscle tone or strength, and no inflammation (Tr. 359). Two days later, on January 18, 2008, Plaintiff went to the hospital because of alleged shortness of breath and tenderness in her legs and upper back. The physical examination revealed that she had a normal gait, as well as full range of motion and function of her musculoskeletal system (Tr. 357). On February 19, 2008, Plaintiff reported to CRHSystem because she was experiencing back pain (Tr. 464).

By February 16, 2009, at an appointment for Plaintiff's gastrointestinal issues, she denied joint pain, restricted range of motion, weakness, muscle atrophy, or backache (Tr. 309-10). Plaintiff

continued to report to the hospital for various concerns, but on each occasion, the physical examination showed good range of motion of her extremities, no back pain, and no gross musculoskeletal abnormalities (Tr. 345, 347, 349, 351, 355).

On November 5, 2009, Plaintiff went to see Sheku M. Idriss, D.O., to get a physical examination for a "medical assistance form." The examination showed that Plaintiff had full range of motion with no edema in her extremities. The neurological examination showed that Plaintiff had no sensory or motor deficits. Dr. Idriss concluded that Plaintiff was employable (Tr. 447). Among Dr. Idriss's records is a prescription for a cane (Tr. 465).

On August 13, 2010, Plaintiff had a lumbar MRI. The MRI showed "[n]o significant spinal canal stenosis and neural foraminal narrowing. Mild degenerative changes present at the lower lumbar levels with some facet degenerative changes are seen at L3-L4, L4-L5 and L5-S1" (Tr. 466).

In 2010, Plaintiff went to Blake Chiropractic and Rehabilitation (Tr. 470-90). On July 9, 2010, Plaintiff indicated that her low back pain was an eight on a ten-point scale (Tr. 482). She alleged that she had at least extreme difficulties performing all activities (Tr. 488).

On October 17, 2010, Plaintiff went to Pinnacle Health System because of an ovary issue. The physical examination showed no lower extremity numbness, weakness, or paresthesias, and no spinal tenderness. The medical provider concluded that Plaintiff "seems to have pain with movement, but she is able to get up and walk without difficulty" (Tr. 501).

On December 22, 2011, Plaintiff went to the Pinnacle Health emergency room, complaining about back pain that radiated to her legs and made it difficult to walk. Although Plaintiff reported severe, constant pain, Richard F. Luley, M.D., observed that Plaintiff was in "no apparent distress, she laughs and smiles when I leave the room, she is laughing and joking." Dr. Luley found that

Plaintiff "reacts rather dramatically to light palpation throughout her back, chest, and abdomen but has no focal tenderness and no consistent tenderness." Further, Dr. Luley stated that Plaintiff's effort was poor; although she walked slowly, there was no evidence of weakness. Dr. Luley advised Plaintiff that he could "find no evidence of any acute medical problem that [he] can treat." Dr. Luley discharged Plaintiff in stable condition (Tr. 494-98).

On May 26, 2011, Plaintiff had another lumbar MRI. The MRI showed a "[n]ear normal lumbar spine MRI except for mild bilateral facet joint hypertrophy in the lower lumbar region. Right anterolateral disc bulge at L1-L2" (Tr. 499).

### 2. Plaintiff's Allegations of Mental Impairments

On March 13, 2008, Plaintiff reported to CRHSystem that she was experiencing depression, anxiety, and insomnia. She denied relief from Zoloft so the medical provider changed her medications (Tr. 231).

On February 16, 2009, Plaintiff went to the doctor for gastrointestinal issues She denied coping issues, mood swings, and sleep disturbances. The psychiatric examination showed that Plaintiff had appropriate judgment, full orientation, normal memory, and appropriate mood and affect (Tr. 309-10).

On April 26, 2011, Dr. Christina Vaglica, D.O., conducted a psychiatric evaluation. Plaintiff reported that she felt depressed since 2000 and "panic attacks" for three years. Dr Vaglica's examination revealed that Plaintiff's mood was anxious and depressed, but her speech was normal, thought process was linear, and her insight, judgment, and impulse control were fair. Plaintiff had no hallucinations, paranoia, delusions, or suicidal/homicidal ideations. Dr. Vaglica changed Plaintiff's medications to Cymbalta and Seroquel (Tr. 516-17).

In 2011, Plaintiff began going to NHS of Pennsylvania for her medication. The medication management progress notes reflected that Plaintiff had a depressed and angry mood, but consistently had a broad affect, cooperative behavior, and organized speech. She had no hallucinations, paranoia, delusions, or suicidal/homicidal ideations (Tr. 506-15). There is no record that she ever had any therapy or counseling.

### C. Relevant Medical Opinions and Assessments

### 1. Plaintiff's Allegations of Back Pain

On July 7, 2010, Plaintiff's endocrinologist, Chris Fan, M.D., completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form. He concluded that Plaintiff could lift and carry up to 20 pounds continuously, 21 to 50 pounds frequently, and 51 to 100 pounds occasionally. He opined that Plaintiff could sit, stand, and walk eight hours in an eight-hour workday. Dr. Fan indicated that Plaintiff did not use a cane to ambulate. She had no limitations in the use of her feet or hands, including reaching, handling, fingering, feeling, or pushing/pulling. She could shop; travel without a companion; ambulate without a wheelchair, walker, canes, or crutches; walk a block at reasonable pace on rough or uneven surfaces; use public transportation; climb a few steps at a reasonable pace with the use of single hand rail; prepare a simple meal and feed herself; care for her personal hygiene; and sort, handle, and use paper/files (Tr. 423-28).

On August 17, 2010, Plaintiff's chiropractor, Robert Blake, D.C., opined that Plaintiff was limited to sitting two hours, standing one hour, and walking one hour in an eight-hour workday because of her "temporary disability." He opined that Plaintiff could occasionally lift up to ten pounds, but never lift more. She could use both hands and arms for simple grasping and fine manipulating, but not for reaching or pushing/pulling. Despite these limitations, Plaintiff was able

to drive, shop, travel without assistance, use public transportation, climb a few steps at a reasonable pace, prepare simple meals and feed herself, care for her own personal hygiene, and sort, handle, and use paper / files. Chiropractor Blake believed that Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces. Blake specifically stated that these limitations had neither lasted nor were they expected to last for 12 consecutive months (Tr. 467-69).

## 2. Plaintiff's Allegations of Mental Impairments

On July 6, 2009, the state agency referred Plaintiff to M. Ralph Picciotto, M.D., to conduct a mental examination and to complete a Medical Source Statement of Ability to Do Work-Related Activities (Mental). Dr. Picciotto concluded that Plaintiff had no limitations in her ability to understand, remember, or carry out short and detailed instructions; no limitations in making judgments on simple work-related decisions; no limitations in interacting appropriately with the public, supervisors, or co-workers; and no limitations in responding appropriately to changes in a routine work setting. Although Dr. Picciotto opined that Plaintiff had a marked limitation in responding appropriately to work pressures in a usual work setting, he based this conclusion solely on Plaintiff's reports that she got dizzy, anxious, and sometimes fainted when she faced pressure (Tr. 364-66).

Dr. Picciotto's accompanying report states that Plaintiff reported that she gets more depressed when she faces lots of pressure and has deadlines to meet, but she has been doing better since she began taking Citalopram. Plaintiff also reported that she was that not sleeping well and did not have much of an appetite, but Dr. Picciotto found that there was no evidence of weight loss. Plaintiff also reported that she occasionally heard voices, but she had not sought help from a psychiatrist or psychologist. Despite these reports by Plaintiff describing significant symptoms, Dr. Picciotto's

mental status showed the following: "Examination shows a well-developed, well-nourished, young, Hispanic female with euthymic mood and appropriate affect. There are no formal thought disorders. There are auditory hallucinations which she refers. There are no other psychotic symptoms. She has a clear sensorium. She is oriented to three spheres with good long and short-term memory and concentration. Denies suicidal or homicidal thoughts and this seems believable." Dr. Picciotto assigned Plaintiff a GAF of 50 (Tr. 368-71).

On July 29, 2009, state agency psychologist, Mark Hite, Ed.D., completed a Psychiatric Review Technique evaluation. He diagnosed Plaintiff with depression and anxiety, but found that she had no daily living restrictions; no social functioning difficulties; moderate concentration, persistence, or pace difficulties; and no extended-duration decompensation episodes (Tr. 381-93).

In the accompanying Mental RFC Assessment, Dr. Hite concluded that Plaintiff was not significantly limited in 18 of 20 abilities in the categories of understanding and memory, sustained concentration and persistence, social interaction, and adaptation. Plaintiff had moderate limitations in her ability to work in coordination with others without being distracted and the ability to respond appropriately to changes in the work setting. Plaintiff had no marked limitations.

Dr. Hite explained his findings. Plaintiff had no hospitalizations because of mental impairments, she had no psychiatric care, and she did not demonstrate significant psychological symptomology. Dr. Hite stated that Plaintiff was fully cable of performing her daily living activities and self care independently; her basic memory processes were intact; she was capable of working within a schedule and with consistent pace; she was able to maintain concentration and attention for extended periods of time; she did not require special supervision in order to sustain a work routine; she was expected to complete a normal workday without exacerbation of psychological symptoms;

and she had no restrictions in understanding, memory, and social interaction. Thus, Dr. Hite concluded that Plaintiff was "able to meet basic mental demands of competitive work on a sustained basis despite limitations resulting from impairments" (Tr. 394-97).

### D. Hearing Testimony

On August 6, 2010, the ALJ held a hearing at Plaintiff's request. Plaintiff testified that she completed high school. She was staying home to care for her two children, ages 14 and 12 (Tr. 45). She last worked in 2008, packing bottles of shampoo from a conveyor belt. She allegedly stopped working because she got dizzy and fell one day (Tr. 51). When the ALJ asked Plaintiff why she was not working, she stated "[b]ecause of the condition with my back," which allegedly prevented her from "sitting or standing for too long" (Tr. 44). She also stated that her back condition prevented her from doing the housekeeping or preparing meals (Tr. 44-45). She stated that she experienced back pain for five years. She treated with a chiropractor (Tr. 45) and took Tylenol with codeine (Tr. 52). On a typical day, Plaintiff testified that she woke up and dressed herself, got her children ready for school by 7:30 a.m., and tried to do household chores but sometimes experienced pain (Tr. 47). Plaintiff went grocery shopping (Tr. 48). Plaintiff did not use a cane or anything else for balance (Tr. 47-48). Plaintiff testified that she got depressed, which caused her to yell at her children, avoid people, and cry about two times per week. She also had a low energy level (Tr. 55, 58). She stated that she had panic attacks, which caused her to sweat and have nightmares (Tr. 55). Plaintiff has never seen a psychiatrist because she "did not know where it was located" (Tr. 55). Plaintiff testified that she took medication, but did not feel any changes (Tr. 55-56).

### E. Function Report

Plaintiff stated in her May 21, 2009 function report that she did "all duties of the house,"

including washing and ironing clothes, cooking daily for about an hour at a time, and cleaning the house (which she did every two days) (Tr. 267). She also took care of her children and went outside for her appointments and to grocery shop (2.5 hours at a time). She could walk 20 minutes at a time without needing a rest. She did not indicate that she used a cane. She was able to count change and use money orders. She spent time with others, talked on the phone, and had no problems getting along with family, friends, and neighbors. Although she felt "more nervous," she stated that she finished what she started, followed written and spoken instructions very well, and handled changes in routine well (Tr. 267-74).

## IV.    Review of ALJ Decision

A five-step evaluation process is used to determine if a person is eligible for disability benefits. See 20 C.F.R. §§ 404.1520, 416.920; see also Plummer, 186 F.3d at 428. If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. See 20 C.F.R. §§ 404.1520, 416.920.

The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. See 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that she is unable to engage in past relevant work. If the claimant

satisfies this burden, then the Commissioner must show that jobs exist in the national economy that

a person with the claimant's abilities, age, education, and work experience can perform. Mason v.

Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the

meaning of the Act lies with the plaintiff. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

### A.    Plaintiff Allegations of Error

### 1.    ALJ Residual Functional Capacity Finding

Plaintiff contends the ALJ erred in finding Plaintiff's residual functional capacity by failing

to properly evaluate Plaintiff's mental impairments; by failing to accept the marked limitation

assessed by the consultative examiner; by failing to give more weight to Plaintiff's GAF score; by

failing to consider the prescription for a cane; by failing to accept the treating chiropractor's opinion

Plaintiff cannot walk a block at a reasonable pace on rough or uneven surfaces; and by failing to

include Plaintiff's language limitation. Pl. Br. at 6-8, Doc. 8.

The ALJ evaluated the record before determining Plaintiff's the residual functional capacity.

### a. ALJ Review of the Evidence

"In July 2010, the claimant's endocrinologist, Chris Fan, M.D., stated the claimant is capable

of lifting up to 100 pounds occasionally and 50 pounds frequently; carrying 50 pounds occasionally

and 20 pounds continuously; she can sit for eight hours, stand for 6 hours, and walk for 4 hours

without interruption; and can only frequently be exposed to loud noise." (Tr. 22-23).

"At the hearing, the claimant testified she does not speak or understand speech in the English

language. She testified she could not sit or stand for prolonged periods; she can sit for only 20

minutes at one time. Her children wash their own laundry and cook the meals with supervision. She

cannot sweep her house because she cannot bend down to sweep underneath the beds; she has no

sensation in her left leg and falls due to the lack of sensation. The claimant stated she does all the

household shopping but cannot lift a gallon of milk. She testified she has difficulty seeing; when she works on a crossword puzzle, her vision goes out after five minutes and does not return for 30 to 60 minutes. The claimant testified she must use her rescue inhaler for her asthma twice per day for the last three years, she gets her headaches four times a week, and they last for four to five hours each, causing her to need to lie down in the dark. When she gets depressed, she testified she isolates herself because when she becomes angry she gets upset and hits people." (Tr. 26).

"The claimant underwent chiropractic treatment for her back pain between July and August 2010. In August 2010, an MRI of the claimant's lumbar spine revealed only mild degenerative changes and some facet degenerative changes at L3-L4, L4-L5, and L5-S1. In August 2010, her chiropractor, Robert Blake, D.C., stated the claimant can sit only two hours, stand only one hour, and walk only one hour during an eight-hour workday; she can occasionally lift 10 pounds; she cannot reach, push, pull, or operate foot / leg controls; she can never squat, reach above shoulder level, climb, twist, or stoop; she can only occasionally bend, kneel, and crawl; she can never be exposed to unprotected heights and moving mechanical parts; and she can only occasionally be exposed to vibrations. He further stated the claimant cannot walk a block at a reasonable pace on rough or uneven surfaces, and assessed her with temporary total disability due to a lumbar spine disc derangement." (Tr. 26).

"With regard to claimant's mental health impairments, the record demonstrates no history of inpatient hospitalizations, partial hospitalizations, intensive outpatient therapy, or individual therapy. The claimant's treating physician diagnosed her with depression and anxiety and prescribed medication in March 2008, but indicated no underlying symptoms upon which to support the diagnosis. When taking her prescribed medication, the claimant's treatment notes demonstrate she is interactive, pleasant, and presents with an appropriate affect." (Tr. 27).

"The claimant also underwent a consultative psychiatric evaluation in July 2009 with M. Ralph Picciotto, M.D. On examination, Dr. Picciotto noted the claimant presented with a euthymic mood and appropriate affect. While the claimant reported subjective auditory hallucinations, he noticed no other psychotic symptoms. The claimant demonstrated a clear sensorium, as well as good long- and short-term memory. Dr. Picciotto diagnosed the claimant with Major Depression and assessed a GAF of 50. Dr. Picciotto also stated the claimant suffers from no limitation in her ability to understand, remember, and carry out instructions, but that based on her own reports, she has a severely limited ability to respond to work pressures." (Tr. 27).

### b. ALJ Findings

"In activities of daily living, the claimant has no restriction. The claimant stated she was capable of performing all household duties, including washing clothes, ironing clothes, cooking, and cleaning her house. She performed all household cleaning and laundry every two days. While the claimant later testified to increasing difficulty in performing these duties due to back pain, there is little evidence the claimant experiences any difficulty performing these duties due to mental health disorders." (Tr. 24).

"In social functioning, the claimant has moderate difficulties. While the claimant's depression causes her to experience periods of self-isolation, anger, and alleged violence, she is able to talk on the phone, supervise her children, and visit her mother every week. Her physicians note she is interactive, pleasant, and displays an appropriate affect. Moreover, while there is little objective or clinical evidence of any difficulties in social functioning, due to the lack of either corroborative or contrary evidence, the [ALJ] finds the claimant has moderate difficulties in social functioning to accommodate at least some level of impairment." (Tr. 24).

"With regard to concentration, persistence or pace, the claimant has moderate difficulties.

The claimant states she experiences panic attacks because of increased demands for productivity. Her concentration is impaired, but she admits she experiences no difficulty following instructions. The medical records do not demonstrate more than a moderate restriction in the claimant's ability to concentrate; the records also do not demonstrate any limitations in the claimant's ability to maintain pace, nor has the claimant alleged any such limitations." (Tr. 24).

"As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration. Since the alleged onset date, the record demonstrates the claimant underwent no inpatient psychiatric hospitalizations, partial hospitalizations, or any form of increasingly intensive psychiatric or psychological treatment to indicate an episode of decompensation." (Tr. 24).

"The [ALJ] gives the opinion of Dr. Fan weight only to the extent the opinion demonstrates the claimant has no more than a minimal restriction in her ability to perform work related activities." (Tr. 23).

"After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 416.967(a) except she can lift no more than 10 pounds; cannot perform repetitive bending; requires the ability to alternate between sitting and standing at will; is limited to routine, repetitive unskilled work tasks at jobs involving no significant interaction with others, defined as no sales tasks and no teamwork." (Tr. 25).

"[Dr. Blake's] opinion that the claimant is disabled is an issue reserved for the Commissioner and is not entitled to any special significance. 20 C.F.R. § 416.927(e). Dr. Blake is also a chiropractor and, as such, is not an acceptable medical source. However, the [ALJ] considered the opinion pursuant to Social Security Ruling 06-3p and gives the opinion little weight. The objective

evidence demonstrating only mild degeneration in the claimant's spine does not support the opinion. The opinion is also inconsistent with the record as a whole, demonstrating little evidence of any ongoing complaints of back pain." (Tr. 26).

"Though the record demonstrates Dr. Idriss prescribed a cane for the claimant's back pain in August 2010, there are no contemporaneous treatment records demonstrating what findings upon which Dr. Idriss based the need for a cane. Moreover, Dr. Idriss stated he believed the claimant's medical impairments did not preclude employment, provided she continues to take her medications. The [ALJ] gives great weight to the opinion of Dr. Idriss because Dr. Idriss is an acceptable medical source who had the opportunity to treat, examine, observe, and evaluate the claimant over a longitudinal period; his opinion is consistent with the objective evidence demonstrating only minimal findings; and is consistent with the record as a whole." (Tr. 26-27).

"The [ALJ] gives some weight to the opinion of Dr. Picciotto because Dr. Picciotto is a psychiatrist who had the opportunity to observe, examine, and evaluate the claimant. However, the [ALJ] gives little weight to Dr. Picciotto's marked limitation because, by his own admission, he based it on the claimant's subjective reports and the [ALJ] finds the claimant less than credible. The [ALJ] also gives little weight to the GAF assessed by Dr. Picciotto. GAF scores by definition are subjective; they are current, not longitudinal; and they represent the worse of the claimant's functioning symptoms. Thus, these scores are not objective; they do not consider the longitudinal history; and not necessarily reflective of the claimant's functioning. As such, the [ALJ] finds that as a whole, they represent a subjectively based overestimate of the severity of the claimant's symptoms and functional limitations." (Tr. 27).

"As for the remainder of the opinion evidence, the [ALJ] gives significant weight to the opinion of the State agency psychological consultant. The consultant is a highly qualified

psychologist who is an expert in the evaluation of the medical issues and disability claims, and the opinion is consistent with the medical evidence of record. However, due to a lack of corroborative and contradictory evidence, the [ALJ] finds the claimant is more limited than opined by the State agency consultant to accommodate at least some greater degree of mental impairment." (Tr. 27).

"The medical record supports the above assessment of the claimant's residual functional capacity. The medical record demonstrates the claimant suffers only a mild impairment in her lumbar spine as of August 2010 and contains little credible evidence of any significant limitations. The record contains little credible evidence of any significant limitations. The record contains little support for any limitations due to back pain, but given the inconsistencies, the [ALJ] limited the claimant to sedentary work with the need for a sit / stand option and no repetitive bending in order to accommodate at least some degree of physical impairment. Similarly, while there is little credible evidence of any significant mental health impairment, the [ALJ] limits the claimant to routine, repetitive unskilled work tasks at jobs involving no significant interaction with others, defined as no sales tasks and no teamwork in order to accommodate at least some degree of mental impairment given her unconfirmed complaints." (Tr. 27-28).

"Furthermore, the [ALJ] does not find the claimant entirely credible regarding the intensity, persistence, or limiting effects of her impairments due to inconsistent information regarding daily activities given in the record, the medical reports, and at the hearing by the claimant. Despite the claimant's allegations of disabling medical and psychological impairments, the claimant did not undergo the type or extent of treatment one would expect from someone unable to work due to medical impairments; the record demonstrates the claimant's symptoms are generally well-controlled with medication; and, where the claimant alleges her symptoms are uncontrolled, the medical record is silent as to reported symptoms . . . there is little evidence the claimant actually experiences the

panic attacks and blurry vision she reports. Moreover, the claimant described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. Until her back symptoms appeared in August 2010, she stated she was able to wash and iron clothes, clean her home, cook, count change, make out money orders, shop for groceries. And currently, her reports of daily activities are inconsistent: the claimant alleges she cannot lift a gallon of milk, but still reports she is able to shop for groceries. While none of these factors alone is inconsistent with a finding of disability, taken together, they are suggestive of an individual capable of performing work activity on a sustained basis within the above residual functional capacity." (Tr. 28).

"In sum, the above residual functional capacity assessment is supported by the opinion of the State agency psychological consultant, the opinion of Dr. Idriss, the opinion of Dr. Fan, and the record as a whole." (Tr. 28).

### c. Case Law and Analysis

Plaintiff contends the ALJ erred in failing to properly consider Plaintiff's impairments. Pl. Br. at 6-8, Doc. 8. From this extensive review of the record, the ALJ throughly evaluated the hearing testimony; language abilities; activities of daily living; social functioning; concentration, persistence, or pace; mental health, including no history of episodes of decompensation; opinion evidence; and credibility to determine Plaintiff's residual functional capacity.

As for the marked limitation assessed by Dr. Picciotto, the ALJ rejected this finding due to the evidence in the record and an evaluation of Plaintiff's credibility. In addition, the ALJ found no support in the record for Dr. Idriss' prescription for a cane. Finally, the ALJ did not adopt the treating chiropractor's opinion that Plaintiff could only walk a block at a reasonable pace on rough or uneven surfaces.

The weight afforded to any medical opinion is dependent on a variety of factors, including the degree to which the opinion is supported by relevant evidence and consistent with the record as a whole. 20 C.F.R. § 404.1527(c)(3)-(4). Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion. 20 C.F.R. § 404.1527(c)(4). A treating physician's opinion does not warrant controlling weight under the regulations unless it is well supported by clinical and laboratory diagnostic findings and consistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). If a treating source's opinion is not entitled to controlling weight, the factors outlined in 20 C.F.R. § 404.1527(c)(2) are used to determine the weight to give the opinion. Id. The more a treating source presents medical signs and laboratory findings to support his medical opinion, the more weight it is entitled. Id. Likewise, the more consistent a treating physician's opinion is with the record as a whole, the more weight it should be afforded. Id.

The ALJ, not the treating or examining physician, must make the disability and residual functional capacity determination. 20 C.F.R. § 404.1527(d)(1)-(2); Chandler v. Comm'r of Soc. Sec., 667 F.3d 356 (3d Cir. 2011). "The law is clear that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Chandler, 667 F.3d at 361; Coleman v. Astrue, 2012 WL 3835403, at *2 (3d Cir. Sept. 5, 2012) (holding that ALJ may choose non-examining physician opinion over treating physician opinion as long as medical evidence not rejected for wrong reason or no reason).

The case law in this circuit makes clear that physician opinions are not binding upon an ALJ, and that an ALJ is free to reject a medical source's conclusions. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2012). In so doing, however, the ALJ must indicate why evidence was rejected, so that a reviewing court can determine whether "significant probative evidence was not

credited or simply ignored." <u>Cotter v. Harris</u>, 642 F.2d 700, 705 (3d Cir.1981). <u>Mistick v. Colvin</u>,

No. 12-cv-1031, 2013 WL 5288261 (W.D. Pa. Sept. 18, 2013).

"[T]he ALJ is not bound to accept every limitation that is found by a medical professional,

but rather only the ones that she finds are credibly established by the record. <u>See Salles v. Comm'r

of Soc. Sec.</u>, 229 Fed. Appx. 140, 147 (3d Cir. 2007). Contrary to Plaintiff's assertion, the ALJ did

not err by incorporating into her RFC finding only those limitations which she found to be credibly

established by the objective medical evidence and the Court finds that the ALJ's RFC determination

as well as her ensuing hypothetical to the vocational expert both enjoy the support of substantial

record evidence. Finally, the Court finds that the ALJ evaluated the medical opinion evidence

properly and in accordance with the applicable rules and regulations and that substantial record

evidence supports her evaluation. The ALJ gave a detailed explanation for why the medical source

statements from the mental health providers were not given controlling weight the ALJ discussed

at length her justification for why the medical source statements from Dr. Jahangeer and Ms. Walker

were inconsistent with and contradicted by the other medical evidence of record, including their own

notes and prior findings. The Court finds that the ALJ discharged her duty because she (i)

demonstrated her consideration of all the relevant medical evidence, (ii) addressed the contradictory

evidence in the record which conflicted with her findings, and (iii) explained why that contrary

evidence was rejected or not given controlling weight. <u>See Cotter v. Harris</u>, 642 F.2d 700, 705 (3d

Cir. 1981). Indeed, the overarching theme of the ALJ's decision was the complete lack of objective

medical evidence which corroborated or even tended to support Plaintiff's complaints of severely

disabling impairments and the Court agrees with the ALJ's finding that such corroborating evidence

was woefully lacking in the record. Plaintiff's subjective complaints were corroborated only by her

own self-reports, which—for the reasons discussed by the ALJ—were not particularly credible. To

that end, the Court finds that the ALJ's credibility determination is well-supported by the record and that Plaintiff's arguments to the contrary are completely unpersuasive, particularly given the minimal treatment record, the inconsistencies in the record that were highlighted and discussed by the ALJ . . . Accordingly, the Court concludes that substantial record evidence supports the ALJ's determination of non-disability." Stewart v. Astrue, No. 13–73, 2014 WL 29035, at *1, n.1 (W.D. Pa. Jan. 2, 2014).

Similarly in this case, the record does not support Plaintiff's assertions of disabling severity. Plaintiff's contentions of error are inconsistent with the objective evidence and activities of daily living. From the ALJ's extensive review, substantial evidence supports the weight accorded to the allegations and opinions of record.

### (1)   GAF Score

Plaintiff argues the low GAF scores demonstrate disability. Pl. Br. at 7, Doc. 8. The ALJ correctly noted that a GAF score is not dispositive of a disabling condition (Tr. 27). The Diagnostic and Statistical Manual of Mental Disorders-IV, the source of the GAF scale, instructs that a GAF score is based on the symptom severity or level of functioning at the time of the examination. Courts within the Third Circuit have accepted the Commissioner's position that GAF scores are not dispositive of disability. See, e.g., Gilroy v. Astrue, 351 F. App'x 714, 716 (3d Cir. 2009) (explaining that a GAF score of 45 did not warrant remand given that no statement of specific functional limitations accompanied the score); Chanbunmy v. Astrue, 560 F. Supp. 2d 371, 383 (E.D. Pa. 2008).

"We further find no error with respect to the ALJ's evaluation of the Plaintiff's mental impairments in fashioning his RFC. The ALJ found Plaintiff was limited to simple, routine, repetitive tasks not involving fast pace or more than simple work decisions, and could have only

incidental collaboration with coworkers and the public and collaboration with the supervisor for about 1/6 of the time. Plaintiff argues that the ALJ's RFC finding failed 'to encapsulate all of the limitations flowing from [his] severe mental illness' and contends that his low GAF score of 45 demonstrates a complete inability to work. The ALJ specifically rejected this GAF score assessed by [the treating psychiatrist], however, as inconsistent with the remaining medical evidence. An ALJ may properly reject a GAF score when it is inconsistent or unsupported by the record as a whole. Torres v. Barnhart, 139 F. App'x 411, 415 (3d Cir. 2005); Blakey v. Astrue, 2010 WL 2571352 at *11 (W.D. Pa. 2010)." Klein v. Colvin, No. 13-cv-1497, 2014 WL 2562682, at *11 (W.D. Pa. June 06, 2014).

"Plaintiff next argues that the findings of consultative examiner [ ] were not properly credited by the ALJ. The ALJ noted the marked and extreme limitations findings, and low GAF score, assessed by [the consultative examiner] in his decision. The ALJ found—as did [the state agency evaluator]—that these findings were inflated, and not an accurate representation of Plaintiff's mental health history. In support of his position, the ALJ cited to Plaintiff's psychiatric treatment at Safe Harbor between October 2009 and October 2010, which revealed a marked—and sustained—increase in Plaintiff's GAF scores, as well as improved mental functioning. Observations by [the consultative examiner] about Plaintiff's appearance were at odds with those at Safe Harbor, as was the anomalous diagnosis of PTSD. Further, [the state agency evaluator] concluded based upon her evaluation of the medical record, that [the consultative examiner's] findings were out of proportion to what was found in Plaintiff's mental treatment history. Her limitations findings did not exclude Plaintiff from finding work. The court, therefore, finds that the ALJ adequately supported his decision to accord [the consultative examiner's] findings diminished weight with substantial evidence from the medical record, particularly the lengthy treatment record from Safe Harbor, the

latter portion of which revealed significant improvement in Plaintiff's mental status. Lastly, to the extent that Plaintiff argues that the ALJ erred in failing to accommodate [the consultative examiner's] finding of marked limitation with respect to interacting with the public, the ALJ clearly indicated that the work which Plaintiff could sustain would not include frequent interaction with the public. Specifically, the ALJ stated that 'the claimant has a need to avoid repetitive reaching, any climbing, and frequent interaction with the general public. As such, Plaintiff's argument is moot.' See Lamb v. Colvin, No. 12-cv-137, 2013 WL 5366260, at *10 (W.D. Pa. Sept. 24, 2013).

Similarly in this case, the ALJ weighed the evidence in the record and found it inconsistent with the low GAF score.

### (2)    The ALJ Considered Plaintiff's Language Limitation

Plaintiff argues she is limited because she does not speak English and only speaks Spanish. Pl. Br. at 8, Doc. 8. In the ALJ's decision, he stated "[t]he claimant is not able to communicate in English, and is considered in the same way as an individual who is illiterate in English" (Tr. 29, Finding No. 7). He then considered this factor in determining whether jobs existed in significant numbers in the national economy that Plaintiff could perform and relied on the Vocational Expert's testimony that such jobs were available (Tr. 29). Plaintiff contends the language limitation was not specifically addressed in the residual functional capacity. Pl. Reply at 3, Doc. 10. However, the ALJ limited Plaintiff to routine, repetitive unskilled work tasks at jobs involving no significant interaction with others, defined as no sales tasks and no teamwork." (Tr. 25). Dr. Picciotto also stated Plaintiff suffers from no limitation in her ability to understand, remember, and carry out instructions. (Tr. 27, 267-74). In addition, Plaintiff reported she followed written and spoken instructions very well, and handled changes in routine well (Tr. 24, 267-74).

Thus, the ALJ's RFC finding includes only "credibly established limitations" and not all

impairments alleged by claimant, <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 554 (3d Cir. 2005).

Accordingly, the ALJ relied on the record and testimony in determining Plaintiff's residual

functional capacity, and the findings are supported by substantial evidence.

### 2. Question to Vocational Expert

Plaintiff contends the ALJ's hypothetical question to the Vocational Expert ("VE") did not

include all of Plaintiff's impairments. Plaintiff also argues the VE acknowledged the job numbers

were not reliable. Pl. Br. at 9, Doc. 8.

As described above, there is substantial evidence to support the ALJ's residual functional

capacity. Therefore, the ALJ properly included all established impairments in his hypothetical

question. Further, the VE did not state that his job numbers were unreliable. He merely stated that

"precise numbers" were difficult, but at no time did he question whether the identified jobs were

available in significant numbers in the national economy, which is the relevant question for Social

Security purposes (Tr. 67-69).

Plaintiff contends the VE failed to provide a statement of the incidence of jobs cited in the

region in which Plaintiff resides or in several regions of the country. Pl. Reply at 3, Doc. 10.

"The vocational expert testified that given all of these factors the individual would be able

to perform the requirements of representative occupations such as final assembler, optical goods,

DOT# 713.687-018 (307,000 jobs nationally; 2,670 in Pennsylvania; 180 locally); lampshade

assembler, DOT# 739.684-094 (307,000 jobs nationally; 2,670 in Pennsylvania; 180 locally); and

table worker, DOT# 739.687-182 (477,000 jobs nationally; 20,790 in Pennsylvania; 1,090 locally).

The vocational expert stated that his testimony is consistent with the DOT except that the DOT does

not address the availability of a sit / stand option. The vocational expert testified that, based on his

experience, the above assessment of the claimant's residual functional capacity does not preclude

performance of the identified jobs." (Tr. 29).

"Plaintiff also alleges that the vocational expert's testimony failed to satisfy the statutory standard by sufficiently discharging the burden of proof that there was work in a significant quantum of jobs in Plaintiff's region. This argument fails because Plaintiff focused only on the four listed jobs despite Plaintiff not being precluded from any type of unskilled sedentary work. (Tr. 550–61). The VE testified that 1,000 jobs regionally existed in the four named job titles alone, and this is a sufficiently significant number itself to support the ALJ's determination. Craigie v. Bowen, 835 F.2d 56, 58 (3d Cir. 1987) (finding that the existence of 200 jobs in a claimant's region represented a significant number). Plaintiff asserts that the vocational expert's testimony was insufficient because he did not offer empirical data to support his job numbers. The Commissioner has taken administrative notice of the numbers of unskilled jobs that exist throughout the national economy at various functional levels. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(b). Section 201.00 of Appendix 2 provides that approximately 200 separate unskilled sedentary occupations can be identified, each representing numerous jobs in the national economy. The VE's testimony that, under the hypothetical posed by the ALJ, the individual could perform the requirements of all unskilled sedentary work thus supports the finding that a significant number of jobs in the national economy are available to Plaintiff." Holley v. Colvin, 975 F. Supp.2d 467, at *484-85 (D. N.J. Sept. 30, 2013).

Accordingly, the VE's testimony supports the ALJ's decision that Plaintiff was not disabled under the Act.

### 3.     The ALJ Found Plaintiff Did Not Meet the Criteria for a Listed Impairment

Plaintiff contends the ALJ erred by failing to explain why Plaintiff did not meet the requirements for Listing 1.04(C). Pl. Br. at 9, Doc 8.

Listing 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis,

spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With: A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b. 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

The ALJ provided the reasoning for finding Plaintiff does not meet the requirements of a listing. "The [ALJ] considered the claimant's degenerative disc disease under Listing 1.04(A). The record does not indicate the claimant suffers nerve root compression, nor do the clinical findings show the claimant has consistently demonstrated neuro-anatomic sensory or reflex loss, or a positive straight-leg raise test for a period of twelve continuous months following the alleged onset of disability. The claimant's degenerative disc disease does not meet the requirements of Listing 1.04(A) or any other listing." (Tr. 23) (emphasis added).

The ALJ found that "[t]he claimant's degenerative disc disease does not meet the requirement

of Listing 1.04(A) or any other listing" (Tr. 23). The ALJ had no reason to specifically discuss Listing 1.04(C) because Plaintiff's condition did not meet any of its elements. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04(c). There were no images showing lumbar spinal stenosis resulting in pseudoclaudication (pressure on the spinal nerve roots). See Tr. 466, 499 (MRI showing a "[n]ear normal lumbar spin"). There was no evidence of chronic nonradicular pain and weakness. See, e.g., Tr. 345, 347, 349, 351, 355, 357, 359, 447, 494-98, 501. There was also evidence of an ability to ambulate effectively. See, e.g., Tr. 357 (normal gait), 423-28 (Plaintiff could walk eight hours in an eight-hour workday and did not use a cane), 501 (Plaintiff "is able to get up and walk without difficulty"). Thus, the ALJ was not required to discuss Listing 1.04(C) because Plaintiff's condition did not meet any of its elements.

Therefore, the ALJ's finding that Plaintiff's impairments did not rise to the disabling level necessary to meet a listing was supported by substantial evidence.

## V. Recommendation

Therefore, the Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1382c; Brown, 845 F.2d at 1213; Johnson, 529 F.3d at 200; Pierce, 487 U.S. at 552; Hartranft, 181 F.3d at 360; Plummer, 186 F.3d at 427; Jones, 364 F.3d at 503.

Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla of evidence. It does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971).

Thus, if a reasonable mind might accept the relevant evidence as adequate to support the

conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. Monsour Med. Ctr., 806 F.2d at 1190.

Accordingly, it is HEREBY RECOMMENDED:

1.       This appeal be DENIED, as the ALJ's decision is supported by substantial evidence; and

2.       The Clerk of Court shall CLOSE the case.

The parties are further placed on notice that pursuant to Local Rule 72.3: Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

Dated: July 29, 2014                                    s/Gerald B. Cohn
                                        _____
                                               GERALD B. COHN
                                        UNITED STATES MAGISTRATE JUDGE